## LEVI BLANCHARD & *al. versus* JOSHUA WAITE.

A contract of insurance is completed, when there is an assent to the terms of it, by the parties, upon a valuable consideration. Neither the giving the premium note, nor the reception of the policy by the insured, are prerequisites to its consummation.

One part owner of a vessel, has no authority, as such, to procure insurance thereon, for the other owners. And where several owners claim payment for a loss, where the insurance was procured by one, it is incumbent on them to show his authority at the time, or a subsequent ratification of his acts by them.

ASSUMPSIT on a contract of insurance. Plea the general issue.

The parties agree upon the following statement of facts, and report:—

"A voluntary association of underwriters, of whom the defendant was one, was organized, and commenced taking risks in Portland, in June, 1839. It was on an alleged contract with this company, that the case arose. John W. Smith was a director of the company, and president of the board. He was also the secretary and treasurer of the company.

"The following were articles of the constitution and by-laws of the company.

"Art. 5. All policies to be issued by this company, shall (except such variations as shall meet the case of this association,) be printed in common form and contain the names of the stockholders, and the secretary shall have full authority, by a general power of attorney, from all the associates, to use their names, and sign for each of them, and every policy so signed, shall be binding on all the associates, the same as if

each had placed his own signature to the policy, in proportion to the stock held by each member.

" Art. 7. All premiums for policies of a less sum than twenty dollars, shall be paid, when the risk is taken, and for all premiums, for risks of twenty dollars and over, the secretary shall be at liberty to take a note for the same on such time as the directors may determine.

" Art. 17. The directors shall determine as to the value of any vessel offered for insurance, and in no case, shall any vessel be insured for more than three-fourths of such value.

" The defendant signed the power of attorney, specified in the 5th Article, and was the holder of two shares of the nominal stock, making the proportion underwritten by him, of any risk, one twentieth part of the aggregate amount.

" The company, on the commencement of their business, inserted an advertisement in the city papers, in the following terms : —

" ' Notice. —*The Portland Marine Insurance Company,* a voluntary association formed for the purpose of *Marine Insurance,* is now organized and ready to receive proposals for insurance on vessels and merchandize on board the same, not exceeding *two thousand dollars* on any one risk.

" ' Office in the *Mariners' Church Building,* west end, up stairs.                              John W. Smith, President of
" ' Portland, June 20.                    the Board of Directors.' "

In the printed portion of the policy used by the company, is this clause : —

" And in case if any one or more of the insurers of the property by this or any other policy, should become insolvent, the loss, if any, occasioned thereby, shall be borne solely by the insured and none of the insurers shall be subject to any other loss or demand, than what he would be liable to, if no such insolvency should happen.

" Also the usual clause of receipt of premium, as follows :—

" Confessing ourselves paid the consideration due unto us for this insurance, by the insured, at, and after the rate of —

" The plaintiffs resided in North Yarmouth, and were not members of the association.

Blanchard v. Waite.

"The company kept a proposition book, or book of applications for insurance, and a duplicate book.

" It is further agreed, that John Yeaton was director for the week, when Loring, one of the plaintiffs, applied for insurance on the schooner Oxford, of which they were sole owners. Smith, the president and secretary, consulted with Yeaton on the application. Yeaton knew Loring, and knew the vessel. Smith had done business with Loring, at the Custom House. They agreed to take $2000, at ten per cent., for one year, commencing on the 25th of October, 1839, lost or not lost. The application was on the 5th of November. After the consultation with Yeaton, Smith informed Loring, that they had agreed to take the vessel, and Loring then signed the terms on the proposition book. No objection was made at the time, either by Yeaton or Smith, to Loring's want of authority to effect insurance for the owners. Afterwards, on the same day, Smith informed Yeaton, that he had taken the Oxford. After signing the proposition book, Loring went away. Nothing was said at that time respecting a premium note. Subsequently, Smith filled out and executed a policy, and recorded it on the duplicate book. Four or five days after, Loring came to the office, and inquired for the policy, and was told that it was ready. Smith then filled up a joint note for the premium, Loring said, he had not authority to sign the note for the other owners, and left the policy, saying he would take the note out to North Yarmouth, and get it signed, and return it in a few days, and took the note. About the 6th of December, Smith met Loring on the wharf, and requested him to go up to the office, and settle that business, meaning to give the note, &c. Loring replied, he would call another time. The loss became known in Portland, December 9th. On the 11th of December, Loring called at the office, mentioned the loss, offered the note, and requested the policy. Smith objected, and on the same day, was directed by the directors, not to deliver it. Loring, on the same day, made a formal demand of the policy, and tendered the note, signed by the four plaintiffs. Smith asked, why the thing had not been completed

before ? Loring replied, that it was not convenient to get the names before, and thought it hard, the company should object, as he could not often meet the owners, except when they met on the Sabbath for worship.

" The note was of the following tenor : —

" *Portland Marine Insurance Company.*

" No. 32. Portland, October 25, 1839.

" For value received, we promise to pay the treasurer of the Portland Marine Insurance Company, or order, two hundred and one dollars,—— cents, at either of the Banks in this City, in 14 months, with interest after.

" $201          "Thaxter Prince,
" Attest."          " Paul Prince,
                     " Levi Blanchard,
                     " J. G. Loring."

" On the same 11th day of December, Smith made a private memorandum, relating to the affair, but before that day, he had made no memorandum or entries, other than the regular papers and entries relating to the insurance. Before hearing of the loss, he had not in any manner canceled or altered any of the papers or records of the transaction, but after the news of the loss arrived, he did make some such entries or cancelling marks on the papers.

" It is further agreed, if evidence to that effect is legally admissible, that the custom is uniform with other insurance offices and agencies in Portland, to keep proposition books, where applicants sign the proposition book, and then leave the office, considering themselves insured, the contract being regarded as finished at the time of signing the book. That as soon as convenient, the policy and note are made out. That very often premium notes lie in insurance offices, unsigned until they are due, and often till after the risk is terminated ; that cases have occurred in Portland, where the papers were not exchanged before losses happened, but the contracts were held good.

" It is further agreed (as stated by two witnesses, not members of the company) that they had several times effected insurance with this company. The contract in each case was

negotiated and concluded in the same manner as the witnesses had always done business at other offices. The party applying signed the proposition book, setting out the subject matter, rate, time, &c. Smith then said, " the insurance was complete," or " the vessel was then at the risk of office," and that the insured might call when it was convenient, and take the policy. The same method of proceeding was agreed to have been practised, in cases of insurance effected with this company, by one who was a director in the company.

" Loring had been a ship owner for 15 or 20 years. Thaxter Prince and Levi Blanchard, two others of the plaintiffs, were old shipmasters. Loring was always the managing owner of the " Oxford," from whom the masters received all their orders and to whom they uniformly made all their remittances.

" It is further agreed, that the plaintiffs were the sole owners (each being a part owner) of the vessel, on the 25th day of October, above referred to, and thence until the 3d day of December following, when she was totally lost, and that she was seaworthy and well found, equipped and manned for the voyage, on which the loss occurred. In addition to the demand made by Loring, for the policy, on the 11th day of December, as above stated, the usual preliminary proofs were presented to the directors of the company, on the 14th day of December, 1839, and adjustment refused by them. The policy used by the company provided, that " loss shall be paid in 60 days after proof and adjustment thereof.

" Upon the foregoing agreed statement of facts, the Court are to be at liberty to render judgment upon nonsuit or default ; and if for the plaintiffs, for such amount as the legal principles applicable to the case may authorize ; and to make such inferences as a jury might make from the facts agreed.

" P. Barnes, for plaintiffs.

" Augustine Haines, att'y for defendant."

The case argued upon the merits, in *Loring* v. *Proctor*, 26 Maine R. 18, involved the same legal questions, as in the present case, although the decision rested mainly on other grounds. The arguments were by the same counsel, and did

not vary essentially in the two cases. By referring to the arguments in that case, the points made in the present, will be sufficiently understood.

*W. P. Fessenden* and *Barnes*, for the plaintiffs.

*Augustine Haines*, for the defendant.

The opinion of the Court was by

WELLS J.   This action is assumpsit on a contract of insurance, and is submitted to the Court upon a statement of facts, with authority to make such inferences, from the facts, as a jury would be at liberty to do.

The application for the insurance, upon the schooner Oxford, was made by Loring, one of the plaintiffs, on the fifth of Nov. 1839, and was then accepted, the company agreeing to take $2000, at ten per cent. for one year, from Oct. 25, 1839, lost and not lost. He signed the terms on the proposition book, which was kept by the officers of a voluntary association, of which the defendant was a member, and which contained a description of the subject matter of insurance, the rate, time, &c. After signing the proposition book, Loring went away. Nothing was then said about a premium note. Subsequently a policy was duly executed and recorded. Four or five days afterwards, Loring came to the office, and inquired for the policy, and was informed, that it was ready. Gen. Smith, who was president and a director, and also acted as secretary and treasurer of the company, then filled up a joint note for the premium. Loring said, " he had not authority to sign the note for the other owners," and left the policy, saying, he would take the note, and get it signed, and return it in a few days. He took the note. On the sixth of December, Smith met Loring on the wharf, and requested him to go to the office and settle the business, meaning, to give the note, &c. Loring replied, he would call another time. The loss became known in Portland on the ninth of December, and on the eleventh of the same month, Loring called at the office, mentioned the loss, offered the note, and requested the policy. But the note was not received, nor the policy delivered. The note bore date

Oct. 25, 1839, the time when it was agreed the risk should commence, and was signed by all the plaintiffs.

It appears, by the evidence, that in other cases, insurance had been effected with this company, in a similar manner; the applicant having signed the proposition book. Smith would then say, the insurance is complete, or the vessel is at the risk of the office, and the insured might call when it was convenient and take the policy. It is admitted the plaintiffs were the owners, when the application was made, and continued to be so, on the third day of December, when the loss happened.

A contract of insurance is completed, when there is an assent to the terms of it, by the parties, upon a valuable consideration. Neither the giving the premium note, nor the reception of the policy by the insured, are prerequisites to its consummation. In the case of *Warren* v. *Ocean Ins. Co.*, 16 Maine R. 439, where liberty to deviate was indorsed upon the policy, the insured gave no premium note, and took from the company no evidence of the contract. But the plaintiff recovered. The course of business, testified to by the secretary of that company, probably prevails in most, if not all, insurance companies. He said it was customary, to leave policies in the office, until the notes were nearly matured, before the assured came in, to take the policies and sign the notes. If the applicant was satisfied with the terms, upon which the president was willing to take the risk, the agreement was entered upon the proposal book, and signed by the applicant, and the risk was then considered as taken, and the policy made out afterwards. Usually when the assured took the policy, he signed the note.

Where the agent of the assured agreed for a policy, and for a note to be given with security for the premium, and left the office before the policy was filled up, but it was filled up a few hours afterwards, and he was so informed; and before it was delivered or called for, intelligence of a loss was received, Mr. Justice Washington held, that the contract was completed. 1 Phil. on Insurance, 9, where reference is made to *Kohne* v. *Ins. Co. of N. A.* 1 Wash. C. C. R. 93.

In the case of *Perkins* v. *Washington Ins. Co.*, 6 Johns. Chan. R. 485, the premium was paid to a person, residing in Georgia, alleged by the plaintiff, to be the agent of the company ; but a loss happened, before the reception of the premium by the company in New York. Chancellor Kent was of opinion, that the person, receiving the premium, had not sufficient authority to bind the company, and that the proposal had not been accepted. The case was carried to the Supreme Court of Errors, and the judgment of the chancellor was reversed. The court were unanimously of opinion, that the plaintiff was entitled to recover. 4 Cowen, 645. The agent was considered as having authority to complete the contract of insurance, and that the company was bound by the reception of the premium, by the agent. In the case of *Thayer* v. *Middlesex Ins. Co.* 10 Pick. 326, the contract of insurance was not considered as completed, because the papers, signed by the plaintiff, remained in the hands of his agent, until after the loss.

No copy has been furnished to us, of what was signed by Loring, but we understand from what facts are submitted, that he made himself liable for the premium, so that it could have been recovered of him.

We find then in the case, the terms of the insurance reduced to writing, in a book kept by the insurers for that purpose, and signed by one of the insured for the whole, a policy made and recorded, and ready for delivery before the loss. Was the contract at that time completed ? Here was a union of minds upon the contract, and the insurers had legal power to enforce the payment of the premium, against Loring.

But it is contended, that the subsequent facts impair the force of this conclusion. A few days after signing the proposition book, Loring called for the policy, and was told it was ready. A joint note for the premium, was then made. Loring said he had not authority to sign the note for the other owners and left the policy, saying he would get it signed, and return it in a few days. The inference, drawn from his declaration, that he had not authority to sign the note, is, that he had no

authority to procure the insurance for the other owners. But he did not say so. It might be, that he considered himself as fully authorized to procure the insurance for them, but that such an authority would not embrace the power of signing their names to a note. But we can only conjecture what were his views — they form no basis for our decision.

One part owner of a vessel has no authority, as such, to procure insurance for the other owners. It is incumbent on the plaintiffs to show an authority, on the part of Loring, to procure the insurance for the other owners or a subsequent ratification. *Foster* v. *U. S. Ins. Co.*, 11 Pick. 85 ; *Finney* v. *Fairhaven Ins. Co.* 5 Metc. 192.

In the case last cited, one part owner procured the insurance for himself and the other owners, without their previous authority, but the bringing of an action on the policy, in their names, was held to be a ratification of his act. There was a mutuality in the contract, because the part owner, who effected the insurance, was liable for the premium. The case and the authorities bearing upon it, were very fully considered. If the insurers had brought an action against the plaintiffs, for the premium, no loss happening, and had failed of recovery, because Loring acted without authority, they would have then had a perfect right of action against him. No question was made about his authority, and it does not appear, but that he was in fact authorized. The company did not ask for any thing more than his individual responsibility ; with that they remained satisfied, and it was only when he called for the policy, that the joint note was presented, for signature.

The note was signed by all the plaintiffs, but not presented at the office, until after the loss. This act, together with the commencement of the suit, must be considered a ratification of what Loring did, in procuring the insurance. Story on Agency, § 248 ; 3 Kent's Com. 261.

Guided by the authorities, to which we have referred, and the principles applicable to contracts of insurance, it is our conclusion, that the plaintiffs are entitled to recover.

It is agreed, that the defendant is liable for one twentieth

part of the risk, and that the preliminary proofs were presented to the directors of the company, on the 14th of Dec. 1839 ; and an adjustment refused. The policies, used by the company, contained a provision, that losses should be paid in sixty days, after proof and adjustment thereof. A refusal to make an adjustment, when it ought to have been done, is to be viewed in the same manner, and to have the same effect, as if it had been completed.

The defendant's proportion of the damages is one hundred dollars, from which should be deducted one twentieth part of the premium, and the balance, with interest from the thirteenth of February, 1840, will be the amount, for which the defendant is liable. By the agreement of the parties, a default is to be entered.