ELIZABETH UNTERHARNSCHEIDT, Appellee, v. THE MISSOURI STATE LIFE INSURANCE Co., Appellant.

**Negotiable instruments:** TRANSFER: INDORSEMENT. Although a note
1 drawn payable to the order of the maker is not complete and negotiable, under the statute, until indorsed by him, still it may be enforced in the hands of a purchaser or assignee for a valuable consideration when delivered to him; as where notes payable to the order of the maker were delivered to an insurance company in payment of a premium, but were not indorsed.

**Insurance:** DELIVERY OF POLICY. Delivery in law is not necessarily
2 manual delivery. Thus where an insurance company delivers a policy to its agent to be by him turned over to the insured, the pre-

mium having been paid when the application was accepted, the neglect of the agent to perform the manual act of placing the policy in the hands of the insured will not suspend or postpone the obligation of the company on its contract.

Same: PREMIUM: PAYMENT: WAIVER: EVIDENCE. The provision of an insurance contract that it shall not become effective until the premium is paid may be waived, in so far as to require payment of the premium in cash, and a promissory note or other evidence of indebtedness may be accepted in lieu thereof. The question of whether promissory notes were accepted in lieu of cash was for the jury under the facts of this case, and the evidence is held to support a finding that the premium was so paid.

Same: CONTRACT: WHEN COMPLETED. Plaintiff's decedent made application to defendant's agent for insurance, and on the same day paid the first year's premium. Later defendant accepted the application, issued the policy and sent it to the state insurance department for registration. Shortly thereafter defendant forwarded the policy to the agent procuring the risk to be delivered to the insured, but owing to the absence of the agent from his office for some days it was not delivered, and shortly before the agent's return the insured died of a sickness contracted subsequent to the issuance of the policy. *Held*, that as the insured had fully performed his obligations the issuance of the policy completed the contract and it then became binding, although in forwarding it to the agent the defendant inclosed a formal letter instructing him not to deliver the policy unless settled for and the insured was in good health, since it could not have been understood that such conditions were to be observed, as the same had been complied with in advance, and therefore the defendant was liable for the loss.

Same: HEALTH OF INSURED: ESTOPPEL. Where an applicant for life insurance had submitted to a medical examination by the company's physician, which had been approved, the company, under the statute, was estopped from pleading, in the absence of fraud, that the applicant was not in the required condition of health at the time of issuance and delivery of the policy.

Exclusion of evidence: PREJUDICE. The exclusion of evidence subsequently admitted is not prejudicial error.

*Appeal from Woodbury District Court.*—HON. DAVID MOULD, Judge.

TUESDAY, NOVEMBER 18, 1912.

ACTION at law upon a policy of life insurance. Trial to jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*C. R. Jones,* for appellant.

*F. E. Gill* and *Robert B. Pike,* for appellee.

WEAVER, J.—The policy in suit is alleged to have been issued by the defendant upon the life of plaintiff's husband, who, it is claimed, died while the insurance so provided was still in force and effect. The defenses relied upon as stated in appellant's brief are: (1) That the premium on said policy was never paid, and therefore the contract of insurance never became of any binding force or effect; and (2) that there was never any sufficient delivery of the policy. The testimony in the case is quite brief and to a considerable extent undisputed. Of the facts admitted or of which there is some support in the record, the following are most material: On June 17, 1910, Louis Unterharnscheidt, residing at Sioux City, Iowa, made and delivered to W. C. Kinzer, resident agent for the defendant at that place, an application for insurance in that company to the amount of $1,000, which application was soon thereafter forwarded to the defendant at its home office. It was also accompanied by a physician's report of the medical examination of the applicant showing him then to be in good health. This application, as executed by the applicant, shows his agreement to pay a yearly premium of $68.63 in semiannual installments. Among the questions answered in the application was the following: "(15) Has the premium for the first policy year been paid in advance? A. No; (a) cash $5; (b) note or notes $30.70 due July 17, 1910." Certain agreements were also embodied in the application, among which was the following: "(7) That the in-

surance hereby applied for shall not take effect unless the premium is paid and the policy delivered to and accepted by me during my lifetime and good health, and that then the first policy year shall end on such date as may be fixed by the company in the policy.'' At the time of making the application, the applicant paid the agent $5 in money and made and delivered to him two notes as follows: ''$33.68. Sioux City, Ia., June 17, 1910. Ninety days after date, for value received, I promise to pay to the order of myself thirty-three & 68/100 dollars, at Sioux City, Iowa, with interest at the rate of 6 per cent. per annum from date. Louis Unterharnscheidt.'' ''$30.00. Sioux City, Ia., June 17, 1910. Thirty days after date, for value received, I promise to pay to the order of myself thirty & no/100 dollars, at Sioux City, Iowa, with interest at the rate of six per cent. per annum from date. Louis Unterharnscheidt.'' For the payment thus made or provided for, the agent then and there gave to the applicant a receipt in these words: ''Missouri State Life Insurance Company of St. Louis. Amount received in cash, $5.00. Dated at Sioux City, Iowa, this 17th day of June, 1910. Received of Louis Unterharnscheidt, the sum of $5.00 cash, dollars, and 2 notes for $30.00 & $33.00, dollars for (insert one, two, or three) the first annual premium required on an application for $1,000.00 insurance on the life of Louis Unterharnscheidt, herein named the applicant, in the Missouri State Life Insurance Company of St. Louis, subject to the terms and conditions of said application. In case the application is not approved by the home office, the amount first named herein, together with notes, if any, shall be promptly returned. [Signed] W. C. Kinzer, Gen. Agent.''

The application was approved by the company. A policy such as was contemplated in the application was issued July 8, 1910, and registered on the following day in the insurance department of the state of Missouri. It was then mailed to the agent, Kinzer, for delivery to the insured. Accompanying this policy was a letter or form of instructions to the agent

not to make the delivery "unless settlement has been received and applicant in good health." The letter bears date July 19, 1910, but it was not registered. Kinzer appears to have left Sioux City on July 15, 1910, and did not return until August 7, 1910. He left no one in charge of his business while absent from the city, and the letter inclosing the policy, which in due course of mail would reach there not later than July 20, 1910, was delivered at his office remaining there unopened until his return as above indicated. The insured died August 2, 1910. Concerning the date when he was attacked by the fatal illness, there was no medical or expert testimony. The evidence was such, however, as to indicate that, while he was not feeling entirely well on July 16th and some days thereafter he exhibited no indications of serious ailment or disease until July 23d, prior to which time he was about his home assisting in some degree with the work of the family. Concerning what occurred between the applicant and the agent at the time the application was made and the money and notes delivered to the agent, there is a dispute between the agent and the plaintiff who was present on that occasion. According to plaintiff's story, the agent, on receiving the money and notes, told her husband that he was insured from that time forward, and that, if he died that night, the insurance would be paid. The agent swears, however, that he did not make the statement, but on the contrary told the husband that the policy would not be delivered until the note was paid. On this point the court instructed the jury that, if they found defendant's claim in this respect to be true that the policy was to be withheld and not delivered until the first note was paid, then there was no sufficient delivery of the policy, and plaintiff could not recover; but on the other hand that, if the notes and cash were received and accepted as payment of the first year's premium, such payment would be sufficient to satisfy the requirements of the policy in that respect. The defendant pleaded a tender and offer to return the money and notes taken for the premium, but the record

contains no evidence of the alleged fact unless it is to be found in a letter written by the defendant company to plaintiff's counsel denying liability on the policy and saying: "The money and notes are held by the company and will be turned over to the executor or administrator of Louis Unterharnscheidt." The foregoing sufficiently states the case for a consideration of the legal propositions argued by counsel.

I.    The first point made in the brief is that the notes given by Unterharnscheidt to his own order and not being indorsed by him were of no legal force or validity and could not therefore operate as payment. It is true

1. NEGOTIABLE INSTRUMENT: transfer: indorsement.

that these notes until indorsed are not negotiable under our statute (Code Supp. section 3060—a184) but it does not follow that such notes, payable to the maker's own order and transferred by him to another for a valuable consideration, are void or unenforceable. It is not an infrequent practice for a person to execute a promissory note or bill of exchange payable to his own order (Daniels on Negotiable Inst., section 27; *Culbertson v. Nelson,* 93 Iowa, 187), and in the absence of statutory restrictions such instruments are enforceable in the hands of a purchaser or assignee (*Miller v. Weeks,* 22 Pa. 89). It has also been held that a holder to whom a promissory note payable to order has been transferred by delivery obtains title thereto and may compel the necessary indorsement by the transferrer (*Swenson v. Stoltz,* 36 Wash. 318, 78 Pac. 999, 2 Ann. Cas. 504), and we can see no reason why this rule does not apply as well to the case where the maker undertakes to pay to his own order. The objection of the appellant to the sufficiency of the notes must be overruled.

II.    It is next argued that the delivery of the policy to the company's agent is not a delivery to the insured person. It is quite obvious that this may or may not be true according to the circumstances under which the

2. INSURANCE: delivery of policy.

policy is placed in the agent's hands. If the premium is paid when the application is presented, and such application is approved and policy executed

as of that date, and nothing remains but to deliver the paper to the insured, it may well be held that the sending of it to the agent to be by him given over to such insured person constitutes a sufficient delivery in law. To say the least, the neglect or omission of the agent under such circumstances to perform the manual act of placing the policy in the hands of the insured will not serve to suspend or postpone the obligation of the company upon its contract. In other words, delivery in law is not necessarily manual delivery. *Davenport v. Insurance Co.*, 17 Iowa, 282; *Lightbody v. Insurance Co.*, 23 Wend. (N. Y.) 18; *Blanchard v. Waite*, 28 Me. 51 (48 Am. Dec. 474); *Warren v. Insurance Co.*, 16 Me. 439 (33 Am. Dec. 674); *Cooper v. Life Ins. Co.*, 7 Nev. 116 (8 Am. Rep. 705); *Stephenson v. Allison*, 165 Ala. 238 (51 South. 622, 138 Am. St. Rep. 26); *Kimbro v. Insurance Co.*, 134 Iowa, 84; *Kilborn v. Insurance Co.*, 99 Minn. 176 (108 N. W. 861); *Yonge v. Insurance Co.*, (C. C.) 30 Fed. 902; *New York Life Ins. Co. v. Babcock*, 104 Ga. 67 (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134); *Fried v. Ins. Co.*, 50 N. Y 243; *New York Life Ins. Co. v. Pike*, 51 Colo. 238 (117 Pac. 899); *Francis v. Insurance Co.*, 55 Or. 280 (106 Pac. 323). These and many other cases emphasize the proposition that legal delivery is very frequently accomplished without an actual transfer of manual possession.

III. It is further said that, under the conditions of the application, the insurance was not to take effect until the first installment of premium should have been paid and the policy delivered while the insured was in good health, and that this fact is negatived by the record. Whether payment was made is a question of fact upon which the jury has found against the defendant, and the finding is not without support in the evidence. That payment in cash may be waived and a promissory note or other evidence of indebtedness may be accepted in lieu thereof without violating the contract of insurance has been held so frequently that it would be an unnecessary

3. SAME: premium: payment: waiver: evidence.

waste of time to array the authorities, but many of the precedents already cited, as well as of those hereinafter referred to, are directly in point. There is no claim that the agent exceeded his authority in taking the notes. The blank forms of application, notes, and receipt were prepared and furnished by the company, and filled out and prepared for signature by the company's agent. The receipt is the receipt of the company which acknowledges having received $5 cash and $63 in notes for the first annual premium. The evidence of the wife of the insured, who was present when the notes were made, supports the theory that they were given and received in payment of the premium.

Nor is the jury's finding in this respect conclusively negatived by the answer found in the application to the question whether the premium had been paid in advance. On the face of it the answer is somewhat ambiguous but not inexplicable. Following the printed question is the word "No," immediately followed by the words, "(a)  Cash $5; (b) notes $30.70," etc. This statement, taken as a whole, may fairly be considered as a somewhat awkward statement or representation to the company that the payment had not been made wholly in cash but partly in cash and partly in notes as there indicated. The company was in no way deceived or misled by the statement for it received the notes and retained them.

We have therefore the following conceded or established facts which must be borne in mind in dealing with the remaining points made by the appellant: First. On June 17, 1910, the deceased made his application to the appellant's duly authorized agent for insurance. Second. On the same day he paid the premium on such insurance for one year. Third. On July 8, 1910, the appellant accepted the application and executed the policy, and on the same day sent it to the state insurance department for registration as one of its risks to be protected by the deposit of securities. Fourth. Not later than July 19, 1910, the policy was forwarded to the agent who procured

4. SAME: contract: when completed.

the risk for delivery to the insured and arrived at Sioux City not later than July 20, 1910. Fifth. The agent had left his office on July 15, 1910, with no person in charge of his business, and did not return until August 7, 1910, and because thereof the policy remained sealed in its envelope until the date last named. Sixth. At the time of the return of the agent, the insured person was dead, having died August 2, 1910, of a sickness dating from July, 23, 1910.

It is true that appellant disputes some of the statements here recited, and especially the date given for the inception of the fatal illness of the insured, but we think the record does not bear out their contention. There was no medical or expert testimony whatever as to the nature of the illness or of its origin or duration. The wife expresses the opinion or conclusion that he died of pneumonia or typhoid pneumonia. She says he was not feeling well for several days after about July 16, 1910. According to her story, however, he first manifested illness requiring attention on the 23d day of that month, or at any rate not earlier than the 21st. It is a further material consideration that the insurance which the company undertook to provide was to be treated as term insurance for the first year, and to be thereafter continued as endowment insurance maturing in twenty years, and, as will be seen by the provision hereinbefore quoted from the application, the company reserved the right to fix the date "on which the first policy year shall end." Acting upon this application, defendant made its policy to bear date July 8, 1910, and provided for premiums in semiannual installments computed from the same date. The endowment period was also fixed or designated as terminating on the corresponding day of the month of the year of maturity.

We come, then, to the inquiry whether, under such a record, a finding that the policy was delivered to the insured in his lifetime can be sustained. As already noted, delivery does not always mean change of manual possession. This rule has been frequently applied in cases like the one now

at bar. For instance, in *New York Life v. Babcock,* 104 Ga. 67 (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134), a party applied for life insurance and, as in this case, paid the premium in advance, receiving a receipt therefor. By the terms of the application and receipt, it was provided that no liability should be incurred by the company until the premium was paid and the policy delivered to the insured while living and in good health. The application was approved, the policy issued and mailed to the company's local agent, who held it three days without attempting to deliver it. On the third day the insured person was killed, and a friend of the family, by trick of misrepresentation, got possession of the policy and gave it to the widow who brought suit thereon. The court, conceding that plaintiff could obtain no advantage through the act of her friend in getting possession of the policy, held, nevertheless, that, independent of such act, a sufficient delivery had been shown. It says:

The controlling question, then, on the subject of delivery is not who has the actual possession but who has the right of possession. Applying these principles to the facts before us, we think the delivery of the policy in question to the applicant had, in contemplation of law, been effected before his death. When his application was accepted at the home office in New York, and a policy issued thereon was placed in the mails for the sole purpose of ultimately reaching his hands, the company parted with its possession and control of the paper. The intention to deliver was complete. The premium money which it had held up to that time upon a conditional trust then became its absolute property. It would have been guilty of no breach of trust in appropriating the fund to its own use. For this privilege thus acquired there must have been a corresponding benefit accruing to the original owner of the fund, and what he acquired in lieu of his money was an insurance upon his life and a right to the policy which evidenced a consummation of the contract. If the delivery was not complete when the policy was mailed, it certainly became so when it reached the hands of the local agent during the lifetime of the applicant and while he was in good health. Construing the act of

the company in transmitting the policy to the agent in the light of the contract, it necessarily follows, in the absence of proof to the contrary, that the agent received the policy charged with no other duty except to hand it unconditionally to the applicant. If this be true, the possession of the agent was the possession of the applicant, and while in the hands of the agent it was simply held by him on deposit or in trust for its real owner. This owner had a right to demand possession of it. Upon refusal he could have recovered it in an action of trover. Conceding this right, we do not see how death can rob the beneficiary of her rights under the contract.

In May on Insurance (3d Ed.) section 55, the author says that, while the act of the company in sending a policy to its agent to be given to the insured upon payment of the premium does not amount to a delivery until such payment is made, yet, where the applicant has done everything that is required of him under his contract, the policy is held merely as a deposit for his benefit. It is said on behalf of appellant that the policy was not sent to the agent in this case to be delivered unconditionally, but to be delivered only upon condition of payment of the premium and the good health of the applicant and the giving by him of a prescribed receipt for the policy. The letter accompanying the policy is apparently a "form letter" prepared for use in sending out policies to agents for delivery to applicants, and contains general cautionary instructions. It must, we think, be taken, as understood by both company and agent, that such instructions were to be observed and the policy withheld from delivery only where the conditions referred to had not been complied with in advance. But the company could not by such instructions add anything to the obligation of the applicant or to the conditions of the contract. It had already received payment of the premium in cash and notes. The giving of a written receipt for the policy was no part of the contract. The applicant having submitted to a medical examination by the company's examiner whose report it approved, his good health at that time is to be assumed.

There is nothing to rebut the presumption that such state of health continued at the time the policy was executed and at the date it was sent to the agent. See *Insurance Co. v. Altschuler*, 55 Neb. 341 (75 N. W. 862). In other words, the applicant had complied with all the requirements of the contract on his part and was entitled to receive the policy. He was not responsible for the voluntary absence of the agent, and his rights cannot be abridged or lost by the failure of the agent to perform his duty in the premises.

In *Fried v. Insurance Co.*, 50 N. Y. 243, a person applied to the agent of a London company for insurance upon his life and paid the premium with the understanding that his insurance began at once, but subject to rejection by the company. The policy was issued and sent to the agent, whose instructions were not to deliver any policy if any unfavorable change had taken place in the health of the insured. The agent, claiming that such change had taken place, refused to deliver the policy, and the insured soon thereafter died. The court, holding it immaterial whether the action be treated as being brought upon the policy or upon the contract independent of the policy, says of the effect claimed by the company or its instructions given its agent: ''The alleged instructions could have no such effect upon the contract. They could not alter or qualify the terms of the contract to the prejudice of the plaintiff.''

In *Kilborn v. Insurance Co.*, 99 Minn. 176 (108 N. W. 861), the applicant, as in this case, gave his note for the first premium. The application was accepted and the policy issued and mailed to the agents on December 23, 1904. On the following day, while the policy was still in the course of transmission through the mails, the applicant was killed. The policy reached the hands of the agents two days later, and they, having learned of the applicant's death, returned the paper to the company. The notes given by the deceased were marked ''void'' and returned to the widow who refused to receive them. The company's defense to an action brought

to recover the insurance was that the premium had not been paid and the policy had never been delivered. Overruling both propositions, the court holds that the giving of the notes under the circumstances, which are not in this respect materially unlike those in the present case, operated as a payment of the premium, and of the alleged want of delivery it adds: "It is very well settled that, where nothing remains to be done by the insured, the mailing of the policy duly executed to the insured or to the agent of the company for delivery constitutes a delivery. . . . The contract is complete when the application is accepted and the acceptance signified by mailing the policy."

The case of *Francis v. Insurance Co.*, 55 Or. 280 (106 Pac. 323), involves circumstances somewhat like those in the *Kilborn* case, with the additional fact that the application contained a provision whereby the insurance was not to take effect until the premium had been paid in the lifetime and good health of the applicant. A policy was issued and forwarded to the agents, but before it was delivered into the possession of the applicant he died, and the policy was returned to the home office. The trial court having found for the defendant, the judgment was reversed on appeal; the court approving and applying the rule of the *Kilborn* case and other similar precedents. The opinion restates the rule as follows: "Where a company receives an application for insurance, acts upon it, signs and seals a policy complete in form, and forwards it to its agent for delivery, the policy is deemed to have been issued from the date of its deposit in the mails." Upon the same general subject the Indiana court has said: "When the company executed and issued a policy in conformity with the application, the contract of insurance was then complete, as it thereby accepted the offer or application of the insured." *New York Ins. Co. v. Greenlee*, 42 Ind. App. 82 (84 N. E. 1101).

In *Insurance Co. v. Pike*, 51 Colo. 238 (117 Pac. 899), the Colorado court deals with a case having significant like-

ness to the one at bar in several respects. There the application provided that the insurance should not take effect unless the policy was delivered to the insured in his lifetime and in good health, and a note was given for the first premium. The application was approved and the policy executed, but, owing to some disagreement between the company and its agent, it was not at once sent out. It was finally sent to the company's Denver agency, which sent it to a bank at the residence of the insured to be delivered when the premium note was paid. Shortly after, and with the matter of the policy still in this position, the insured died. Action was brought to recover the insurance, and defense was made on the ground that no contract was ever in fact consummated, that the premium had never been paid, nor the policy delivered. The plea was held to be unavailing. The court says, among other things, that the mailing of the policy from the home office "constituted a delivery thereof," and that the instructions to the bank not to deliver to the insured until the note was paid "could not affect the contract already made." Many other precedents might be here quoted to the same general effect, but we think it unnecessary to prolong this opinion for that purpose. As bearing upon this, as well as upon other points in this case, see *Mulligan v. Insurance Co.*, 149 Ill. App. 516; *Insurance Co. v. Davis*, 141 Ky. 358 (132 S. W. 410); *Mutual v. Farmer*, 65 Ark. 581 (47 S. W. 850); *Insurance Co. v. Altschuler*, 55 Neb. 341 (75 N. W. 862); *Life Ins. Co. v. Moore*, 117 Ky. 651 (79 S. W. 219).

The rules of law thus affirmed may be applied to the case before us without the slightest injustice to the insurer. Acting upon its reserved right to fix the date of the risk which it undertook to assume, it named July 8, 1910. It demanded and received premium for the initial year beginning upon that date, and computed future accruing premiums therefrom. When the policy had been executed in conformity with the offer of the applicant, the minds of the parties had

met; and the premium being paid, and nothing remaining for the applicant to do to perfect the contract, the execution by the company of the written evidence of that agreement and sending it, either direct to the applicant or to the local agent for his use according to the usual course of business, was all that the law or the terms stipulated in the application require to make a binding and enforceable contract. Each party had furnished the agreed consideration for the undertaking of the other, and each is entitled to its promised benefits.

Appellant cites the case of *Hawley v. Insurance Co.*, 92 Iowa, 593, as controlling the present issue in its favor, but we think it is not in point. In that case the application was made for the benefit of or at the request of a third person who held a personal claim against the agent of the insurance company; the plan being to pay the premium by an indorsement or credit upon the agent's said personal debt. The policy was issued and put into the hands of the agent during the lifetime of the applicant. The agent sent it to a third person with instructions not to deliver it until the promised indorsement was made on his note. Before that was brought about, the applicant died, and it was held by this court that there had been no delivery of the policy or payment of the premium, and the company was not liable. The simple statement of the case and the questions there considered is a sufficient demonstration that their decision in no manner controls the controversy we are now considering.

IV. Our statute relating to life insurance provides that, where an applicant submits to medical examination by the company's physician and is pronounced a fit subject of insurance, such company, in the absence of fraud, shall be estopped from pleading that the insured person "was not in the condition of health required by the policy at the time of the *issuance or delivery thereof.*" Code, Section 1812. No fraud is pleaded, and none is shown in testimony. It follows of necessity that, if we are right in the conclusion heretofore ex-

5. SAME: health of insured: estoppel.

pressed that, under the circumstances of this case, the issuance of the delivery of the policy dates from its execution and mailing, the applicant's condition of health at that time is not open to question or consideration in this action.

V. The appellant complains of the court's refusal to give certain requested instructions to the jury. The requests were mostly predicated upon the theory that the defendant was entitled to a verdict as a matter of law. The points so made are all governed by the conclusions we have already announced and require no further discussion. There was no error in the ruling.

Error is also assigned on the exclusion of testimony as to the agreement or understanding upon which the notes given by the insured were delivered. It is

6. EXCLUSION OF EVIDENCE: prejudice.

enough upon the point so made to say that the testimony so excluded was afterward admitted and both parties gave to the jury their version of the transaction.

The defendant also offered to examine the attending physician as to the last sickness of the insured. This testimony was excluded upon the statutory objection thereto. In this there was no error.

There is nothing in the record to justify us in ordering a new trial, and the judgment of the district court is *Affirmed.*