## ABNER HOGE v. DWELLING-HOUSE INS. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF GREENE COUNTY.

Argued October 10, 1890—Decided November 3, 1890.

(a) The recognized agent of a foreign fire insurance company wrote and countersigned a policy signed by the company's officers, reported it to the company for approval, and, after due time receiving no reply, delivered the policy and accepted and transmitted the premium to the company, all in his usual course of dealing:

1. The property insured being subsequently destroyed by fire, the company was liable upon the policy; and it could not be heard to allege, as a defence, that as there was no evidence that when the policy was issued the company was authorized to transact business in Pennsylvania,* the policy in suit was therefore ultra vires and void.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-LIAMS, McCOLLUM and MITCHELL, JJ.

No. 174 October Term 1890, Sup. Ct.; court below, No. 80 October Term 1885, C. P.

On July 15, 1885, Abner Hoge brought assumpsit against

---

* See §§ 9, 10, 11, act of April 4, 1873, P. L. 26; § 47, act of May 1, 1876, P. L. 66; § 6, article XVI., constitution.

the Dwelling-House Insurance Company of Boston, claiming to recover on a policy of fire insurance in said company for $1,000, dated September 2, 1884. Issue.

At the trial on November 9, 1889, the plaintiff called J. W. Scott, and offered to prove: That the witness on the stand was the agent of the defendant company, was appointed at the date of the policy in suit, and for some time prior thereto and for several months thereafter; that as such agent he was authorized to receive applications for insurance on behalf of the company, and to write, countersign and deliver policies, the same having been furnished him by the company duly signed and countersigned by its president and secretary; that having accordingly examined the premises described in the policy in suit, and having received from the applicant all satisfactory information as to other matters, he wrote and countersigned the policy in suit, the same having been sent to him in blank duly signed and countersigned by its president and secretary: that he then sent a copy of the policy in suit, just as it was filled out by him and as it now appears, to the company, together with a letter in which all the facts were stated; that, having waited a considerable time and believing that he had full authority to deliver the policy he did deliver it, upon receipt of the premium: this is to be followed by the introduction of the policy as evidence.

Objected to.

By the court: Objection overruled; exception.[17]

The witness testified in substance as proposed in the offer. He testified further that some time before the loss he paid the premium received from the plaintiff to the defendant company, reporting it distinctly with other like items.

The policy being offered in evidence, the defendant objected:

1. That the defendant company is a corporation and only authorized to issue policies under its seal; that the paper or policy offered in evidence is not sealed by the company.

2. That there is no evidence that, at the time this policy is claimed to have been issued, or claimed to have been in force, the defendant company was duly empowered by law to transact business in this state, and therefore this policy is ultra vires and void.

3. That there is no evidence showing that J. W. Scott, the

alleged agent of the company at the time this policy was issued, was authorized to issue the same.

4. That the evidence is otherwise incompetent and irrelevant.

By the court: In connection with the evidence already in, we regard the evidence as now offered competent, and the objections are overruled; exception.[2]

The plaintiff then showed that the building insured, to wit, the Downey House hotel, was partly destroyed by fire on November 24, 1884; that other companies having insured the same building, and notice being given to the defendant company, the latter directed McAninch, its general agent at Cleveland, Ohio, to proceed to Waynesburg, Pa., where the building was situate, to adjust the loss. McAninch wrote to A. D. Lundy, representing other insuring companies, requesting him to adjust the loss for the defendant company. For this purpose, Lundy appeared upon the ground on December 23, 1884, and under his directions appraisers were selected, who appraised the entire loss at $3,127.93. The proportion of the loss, as thus adjusted, which the defendant company was to pay, was $500, for which amount Lundy drew a draft upon the company, payment of which was afterwards refused, the defendant repudiating the transaction on the ground that its business was confined to the insurance of dwelling-houses.

At the close of the testimony, the court, INGHRAM, P. J., instructed the jury and a verdict was returned in favor of the plaintiff for $646.16. A rule for a new trial having been discharged, the defendant took this appeal, assigning for error, inter alia:

2, 17. The admission of plaintiff's offers.[2] [17]

Mr. P. A. Knox (with him Mr. C. Stuart Patterson and Mr. J. B. Donley), for the appellant.

Mr. R. L. Crawford (with him Mr. Geo. L. Wyly), for the appellee.

PER CURIAM:

The assignments of error in this case are too numerous to discuss, unless they had more merit.

The plaintiff obtained a policy of insurance on his building from the recognized agent of the company at Waynesburg, Greene county, and paid the agent the premium therefor. The agent reported the matter to the home office at Boston, and forwarded the premium. After waiting the usual time for a reply and receiving none, he delivered the policy to the assured. This he testified was in accordance with his usual course of dealing with said company. A fire occurred shortly thereafter, and this suit was brought to recover for the loss sustained thereby. When, upon the trial below, the plaintiff offered his policy in evidence, he was met with the following objection, inter alia, to its admission: " That there is no evidence that, at the time this policy is claimed to have been issued, or claimed to have been in force, the defendant company was duly empowered by law to transact business in this state, and therefore, this policy is ultra vires, and void." See second assignment. The company not only repudiated its policy, but also its agent who issued it. For anything that appeared upon the trial, the case was an honest one, and the evidence fully justified the verdict found by the jury. The remaining assignments have about the same merit as the second one, above referred to.

Judgment affirmed.

On November 10, 1890, a motion for a re-argument was refused.