LIFE INSURANCE CLEARING COMPANY v. MARGUERITE ALTSCHULER.

FILED JUNE 9, 1898. No. 7727.

1. **Payment:** APPLICATION. One who receives and appropriates to his own use money sent him for a particular purpose will be held to have received and retained it in accordance with the purpose. for which it was sent.

2. ———: BAILMENT. Money sent to a person as a payment cannot, without the consent of the sender, be received and held as a bailment.

3. **Life Insurance:** ASSURED'S HEALTH: EVIDENCE. Evidence examined, and *held* sufficient to warrant the jury in finding that the assured was in good health when the policy in suit was delivered and the first premium paid.

4. ———: ACCEPTANCE OF PREMIUM: FRAUD: PLEADING. A defendant, in an action on a policy of life insurance, which claims that it

was induced to accept payment of a past-due premium by the fraud of the beneficiary named in the contract, must, to avail itself of that defense, plead and prove the fact.

5. Continuance: ABSENT WITNESSES. There was no prejudicial error in denying an application for a continuance in order to secure the testimony of witnesses who afterwards appeared and testified at the trial.

6. ——: ——. An application for a continuance grounded on the absence of a material witness is properly denied where the party making the application has not been diligent in attempting to procure the testimony or compulsory attendance of such witness.

7. ——: ——: HARMLESS ERROR. Where it appears that the evidence of an absent witness, if given on the trial, could not possibly change the result, an order refusing a continuance to obtain his testimony, if erroneous, would not be prejudicially so.

REHEARING of case reported in 53 Neb. 481. *Former decision sustained.*

*Tibbets Bros., Morey & Ferris,* for plaintiff in error.

*M. A. Hartigan, contra.*

SULLIVAN, J.

An opinion heretofore filed in this case will be found reported in 53 Neb. 481. On the application of the defendant a rehearing was allowed and the cause again submitted on printed briefs and oral arguments.

The principal reason urged for a reversal of the judgment is that the contract of insurance was never in force. Printed in red ink on the face of the policy appears the following condition precedent:

"This policy shall not take effect until the first premium shall have been paid to the company or to some person authorized by the company to receive it while the said insured is in good health and in accordance with the health certificate and premium receipt accompanying the same.          RUSSELL R. DORR, *President.*"

The plaintiff admitted that no health certificate was furnished at any time, but insists that the requirement

in regard thereto was waived. ·· In the former opinion it
was said that the question of waiver was submitted to
the jury on conflicting evidence and that their finding
in favor of the plaintiff, would not be disturbed. The
statement is not entirely accurate. A closer inspection
of the record has convinced us that the evidence upon
this point is not in conflict. It is all one way in relation
to certain facts, which we think conclusively establish
a waiver. By the terms of the policy the second premium,
amounting to $53.95, became due and payable on July 5,
1893. It was not paid at that time, but on the 4th of
the following month Mrs. Altschuler procured a draft
for the amount and sent it to the home office of the com-
pany at St. Paul. The draft was received on August 6,
and immediately cashed, and, by the direction of the
president of the company, a receipt in due form, signed
by him, and bearing date of July 5, was sent to Mrs.
Altschuler. The company had previously directed its
agent at Grand Island to collect this premium. On
August 14 Altschuler died and on the 18th of the same
month the defendant purchased a draft and sent it to
the plaintiff, informing her that the policy on her hus-
band's life had never been in force, and that the premium
paid by her had been kept on deposit while awaiting the
delivery of the health certificate mentioned in the con-
tract. But this money was not sent to be held on de-
posit. The letter accompanying the remittance stated
in plain language that it was sent as payment of the
second installment of the premium; and the defendant
did not receive it on deposit. It received it as payment,
for it so states in its receipt. The recital of that docu-
ment is that the money was received for "the quarterly
premium due July 5, 1893,  *  *  *  on policy No. 2143,
insuring the life of Sigmund Altschuler." Indeed, ac-
cording to a familiar principle of law the defendant
could not have retained the money except on the terms
and for the purpose it was tendered. By the mere act
of converting plaintiff's draft into money and retaining

the same the defendant accepted it as payment of the premium then due. The idea of holding it as a deposit was manifestly an afterthought suggested by information of Altschuler's death. It is then indisputably established that, with full knowledge of the fact that the health certificate had not been furnished, the company collected and retained, until after the death of the assured, the premium which became due on July 5, 1893. Having done so—having treated the contract as valid for the purpose of collecting premiums—it cannot now, when sued by the beneficiary, insist that it was void from the beginning. The company, with full knowledge of all the facts, dealt with the assured, during his lifetime, on the assumption that his contract of insurance was in force, and it cannot, now that he is dead, be heard to assert that he was deluded by its agents into purchasing and paying for a still-born policy. To hold that the company could escape liability under such circumstances would shock the crudest sense of justice.

But the defendant contends that a waiver of the health certificate did not include a waiver of the condition in regard to the state of Altschuler's health at the time the first premium was paid. Conceding that to be true, it does not follow that the verdict is without sufficient support in the evidence. It is claimed that Altschuler died of scirrhosis of the liver. At the instance of the company's agent he submitted to a medical examination on March 25, 1893. At that time the examiner found his liver free from any suspicion of disease and that he was generally in a fair condition of health. The same physician testified at the trial that he considered the assured a fair risk when the examination was made. About April 7, 1893, the policy was personally delivered by the company's representative who at the same time collected the first premium. Altschuler went about his business in the usual way until the latter part of the following July, when he became sick with the malady of which he afterwards died. From these facts the jury might well

infer that he was in good health at the time the policy was delivered and the first premium paid.

It is claimed that the company was induced to accept the second premium by false representations of Mrs. Altschuler and that such acceptance was, therefore, ineffective as a waiver of the health certificate. It is said in the former opinion that "neither fraud nor misrepresentation was pleaded with reference to the acceptance of this payment." The accuracy of this statement, although vigorously assailed in defendant's brief, is fully sustained by the record. It is distinctly alleged in the petition that the second premium was paid during the lifetime of Sigmund Altschuler. The company denied this averment and characterized the alleged payment as a mere deposit. It took the ground that the transaction with Mrs. Altschuler was, in legal effect, a bailment. Had it desired to present an issue of fraud for trial it should have pleaded by way of confession and avoidance —it should have admitted the fact and avoided its legal consequence by showing that the plaintiff had by artifice misled it.

Another ground upon which defendant demands a reversal of the judgment is the failure of the trial court to grant a continuance to enable it to procure the attendance of three absent witnesses. There was no error in denying the application. Two of these witnesses were actually present and testified at the trial. The testimony which it is claimed the other would give related to the alleged waiver of the health certificate by delivering the policy and collecting the first premium. In view of the fact that a waiver was conclusively established by the payment of the second premium this evidence could not have strengthened the company's defense. Besides no sufficient effort had been made in advance of the trial to secure the testimony or compulsory attendance of any of these witnesses. Defendant relied entirely on a promise that they would be in court when needed, and, consequently, assumed the risk of that promise being

broken. The action of the court was well within the limits of sound judicial discretion.

We do not see any sufficient reason for receding from the conclusion heretofore announced, and the judgment will, therefore, stand

AFFIRMED.