## McGregor, et al. v. Metropolitan Life Ins. Co.

(Decided May 4, 1911.)

### Appeal from Caldwell Circuit Court.

1. Life Insurance—Contract—Modification by Verbal Statements— Alleged Mistake—Failure to Read Contract—It is well settled that written instruments cannot be altered or modified by any verbal statements or representations of either party in the absence of fraud or mistake in their execution, and the failure to read them does not constitute a mistake within the meaning of the word as here used.

2. Waiver of Contract—Retaining First Annual Premium—Peremptory Instruction Approved—The contract of insurance as set out in the application and receipt being a binding one and the company not having waived it by retaining the $3.00 paid on the first annual premium, a reasonable time and until it could be ascertained whether the applicant was going to get well, there was nothing for the court to submit to the jury and the peremptory instruction was proper.

HODGE & HODGE for appellants.

JOHN C. GATES for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On January 16, 1909, Nancy Maxwell McGregor made a written application to the Metropolitan Life Insurance Co., through its local agent at Princeton, Kentucky, for a policy of insurance upon her life for $2,000. In the application her father and mother were named as the bene-

ficiaries. When she signed the application she paid to the agent $3 on account of the first premium, and the agent issued to her a written and printed receipt therefor. This receipt provided that:

"No insurance is in force upon the application unless and until a policy be issued thereon and delivered in accordance with its terms." Among other provisions of the application was the following:

"The company shall incur no liability under this application until it has been received, approved, and the policy issued and delivered and the premium has actually been paid to and accepted by the company during the life-time of the life proposed and while he is in good health."

"Following the application, a medical examination was submitted to by the applicant before the local medical examiner at Princeton, Kentucky, and his report, together with the application, was forwarded to the home office of the company in New York, where it was approved, and, on January 27, 1909, a policy of insurance was issued and forwarded to the local agent at Princeton, Kentucky, for delivery to the applicant. After the application for insurance had been made and the medical examination had, but before the policy had been returned from the New York office to the agent at Princeton, the applicant became sick and was confined to her bed at the time the policy was received by the agent. Upon learning these facts he declined to deliver the policy. The applicant grew worse, and died on February 16th, following. The policy of insurance was never delivered to her, but returned to the home office in New York. After the receipt of the policy by the local agent, Loton McGregor, the father of the applicant and one of the beneficiaries specified in the application, learned that the policy was in the hands of the agent and tendered the balance of the semi-annual premium, amounting to something over $12, and demanded the policy. The agent explained to him that, under the terms of the application and policy, he had no right to deliver it to him because his daughter was sick, and, at the time he made the refusal, he stated that as soon as she got up, that is, well, he would deliver it. After the death of the applicant the balance of the premium was again tendered and the policy demanded. Following this refusal on the part of the company, suit

was instituted to compel the company to deliver or surrender to the beneficiaries the policy and to pay the $1,000, less the balance of the semi-annual premium remaining unpaid.

The petition alleges that the agent through whom the application was made agreed that the policy of insurance, if one should issue, should be binding upon appellee and in full force and effect from the date of the acceptance of the application and the issual of the policy. The company answered and traversed this among the other material allegations of the petition, and pleaded affirmatively the clause in the application and receipt above referred to, and stated that at the time the policy was received by the local agent the applicant was sick, and that for this reason and no other the policy was not delivered to her; that she continued to remain sick from the date of the receipt of the policy by the local agent until her death on February 16th. In the reply the plaintiff traversed the affirmative matter in the answer, and pleaded that the company did not rely upon the portions of the application set out in its answer, that it was printed in an obscure place in the application and was not read to the applicant at the time the other portions were read to her, and that it was not considered by either party. They further pleaded that the receipt was not read prior to the execution of the application; also, that the company, by the retention of the $3 advanced payment on the semi-annual premium, waived its right to rely upon the clause in the application requiring that the policy be delivered to the applicant in good health before it became operative. The affirmative matter in the reply was traversed in the rejoinder, thus completing the issues, which, when analyzed, are two; First, did the applicant become sick after the date of the application for insurance which she signed? And second, did the company waive its right to rely upon the clause in the application and receipt providing that the policy should not be binding unless delivered to the applicant while in good health?

Upon the trial of the case Loton McGregor, father of the applicant and one of the beneficiaries, was introduced as a witness, and at the conclusion of his testimony the court peremptorily instructed the jury to find for the company, which was done.

In their motion and grounds for a new trial appellants assigned and relied upon four errors, first, that the court erred in rejecting competent evidence; second, that the court erred in refusing to grant a continuance of the case in order that plaintiff might file an amended petition, pleading a modification of the written application; third, that the court erred in refusing to consider an amendment as offered to be filed; and fourth, that the court erred in peremptorily instructing the jury to find for the defendant. The motion for a new trial was overruled and judgment entered upon the verdict. Plaintiffs appeal, and for reversal rely upon the grounds set out in the motion for a new trial.

The evidence which the court rejected, of which appellants complain, is that offered to show that, at the time the application was made and the $3 paid on the first semi-annual premium, the agent of the company represented to the applicant that the policy would become binding upon the acceptance of the application and the issual of the policy. The court rejected this testimony for the evident reason that he was of opinion that the application, in the absence of a charge that it was procured through fraud or mistake, represented the real contract. The witness testifies that is his presence in their home the agent and his daughter, the applicant, discussed the proposition of her taking insurance and the kind she wanted, and after they had agreed the application was drawn up and signed by her and the $3 paid and a receipt issued therefor. The first of these questions and answers is as follows: "Was anything said about when the policy would become of full force, and if so, what was it?" The avowal is, that "The agent stated that if she would pay $15.36, the amount of the semi-annual premium, he would give her a receipt binding from date; then the question was asked if they paid the $3 when would the policy become in full force and effect, and the agent answered and said from the date of the issual of the policy." When the court refused to permit this question to be answered plaintiffs offered to amend their pleadings, evidently with the end in view of making the line of interrogation which his counsel had entered upon competent. But the court refused to pass the case to give the counsel time to prepare the amendment. In this the court did not abuse his discretion. Both the application and the receipt in

plain terms contradicted the avowal, and as there is no allegation that the applicant was deceived or over-reached or a fraud was practiced upon her, this evidence was clearly incompetent to alter, vary or modify the terms of the contract as set out in the application. The applicant is shown to have been a school teacher—an educated woman. In the pleadings it is alleged that she did not read the application or the receipt. This fact can not be of benefit to her, for, being able to read and an opportunity being offered to her to do so, she may not shelter behind the allegation that she failed to exercise this right. As was well said by this court in the case of J. I. Case Threshing Machine Co. v. Matting-ly, 142 Ky., 582:

"It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it or did not know what it contained. If this were permitted contracts would not be worth the paper upon which they are written. But such is not the law. A contractor must stand by the words of his contract; and if he will not read what he signs, he alone is responsible for his omission."

The applicant then, being charged with the knowledge of what the contract she signed contained, the court did not err in refusing to permit evidence under the circumstances to show a different contract from that expressed in the application. It is well settled that written instruments can not be altered or modified by any verbal statements or representations of either party in the absence of fraud or mistake in their execution, and the failure to read does not constitute a mistake within the meaning of the word as here used. In the case of Provident Savings Life Ass. Society v. Elliott, 29 Rep., 552, this court, in discussing the effect to be given a writing into which two contracting parties have entered, quoted with approval from the case of Fowler v. Preferred Accident Co., 100 Ga., 300, the following:

"All oral agreements and negotiations between the plaintiff and the defendant's agents, in reference to accident insurance which the plaintiff desired to procure in the defendant company, resulted in the plaintiff filling out and signing an application for a policy for such insurance in the defendant company, and the agent of the defendant giving the plaintiff a receipt for a certain

sum on the first quarterly premium of the policy to be issued by the defendant, and were, therefore, merged in the said written instruments by virtue of the plain and familiar rule that all oral negotiations and conversations and agreements between the parties which either precede or accompany the execution of the instrument, are to be regarded as merged in or extinguished by it, and the writing is to be treated as the exclusive agreement by which the parties are bound. Therefore, whatever conclusions were reached, or stipulations agreed upon, by plaintiff and defendant's agents in the oral negotiations and conversations between them in reference to the insurance, must be considered as embraced in the written application and receipt.''

In the case of Vansant v. Runyon, 19 Rep., 1981, in disposing of a similar question, this court quoted with approval from 1 Greenleaf on Evidence, section 275, the following:

''All oral testimony of a previous colloquium between the parties, or of a conversation or declaration at the time it was completed or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected.''

And in Hill's Admr. v. Penn. Mutual Life Ins. Co., 28 R., 790, where the contention was that the contract of insurance became operative from the time of the signing of the application, this court said:

''The written application distinctly shows that there was to be no insurance and that the company should incur no liability until the application had been accepted and the policy issued and delivered during the lifetime of the insured and while he was in good health.''

This disposition of the first error complained of obviates the necessity of passing upon the second and third, for the reason that, if the testimony offered was not competent, it would not have in any wise aided plaintiff's case to have permitted the desired amendment to be filed.

The only remaining question is, did the company waive that provision of the application providing that the policy should be delivered to the applicant while in good health before it became a binding contract by re-

taining the $3, part payment on the first semi-annual premium after the agent of the company learned that the applicant was sick? The witness, Loton McGregor, testified that the agent told him that his only reason for refusing to deliver the policy was that his daughter was sick, that he had seen the doctor and he said he thought she would be up in a few days, and he would then deliver it. This is the substance of his testimony, and this explains why the $3 was retained by the agent. It was done in the hope that applicant would recover her health so as to enable her to receive the policy. The receipt provided that if the policy was not issued and delivered the $3 should be refunded and returned to the applicant. The applicant died on February 16th. Thus, less than three weeks elapsed between the day of its receipt and her death. The retention of the money by the agent for this length of time did not under the circumstances operate as a waiver of that provision of the application set up and relied upon by the company. The best evidence that the company did not so regard it is found in the fact that its agent was at that time refusing to deliver the policy for the very reason that the clause in the application under consideration prohibited him from doing so.

A similar question was before this court in the case of Commonwealth Life Ins. Co. v. Davis, 124 S. W., 345. There the applicant, at the time of making the application, had paid to the agent sixty cents, this being one weekly installment on the policy. The company issued the following receipt therefor:

"Received from Mrs. Davis sixty cents, being a deposit on account of application for insurance in the Commonwealth Life Insurance Company made this date, which said deposit is to be paid by me to the company if the application be accepted, and returned to the applicant if the application be rejected. No obligation is incurred by said company by reason of this deposit, unless and until a policy is issued upon said application, and unless at the date and delivery of said policy the life proposed is alive and in sound health."

This application was dated January 30, 1907. The policy was not delivered on March 11, 1907. The applicant took pneumonia and on the 17th died. Between the date of the application and the death of the applicant the policy was issued and sent to the local agent, but

not delivered. Demand was made therefor and upon refusal suit was instituted as in this case. In denying a right to recover this court said:

"It being admitted that the policy was not issued while the insured was in sound health, or delivered to him at all, the case narrows down to the single question whether or not the receipt of the first premium, the acceptance of the application, and the issual of a policy completed an enforcible contract between the parties notwithstanding the conditions of the receipt and application. * * * It is manifest that a valid contract of insurance was not made, as one of the conditions upon which the company agreed to issue and deliver the policy was that the insured should be in sound health at the date of its issual and at the time of its delivery. The company had the right to annex this condition to the application, and although it may have accepted the application in ignorance of the condition of health of the insured, it had the right according to the plain language of the application to decline to issue the policy or to decline to deliver it if before issual or delivery it ascertained that the insured was not in sound health." To the same effect are Clark v. Mutual Life Ins. Co., 129 Ga., 571. and Kilcullen v. Metropolitan Life Ins. Co., 108 Mo. App., 61.

The contract, as set out in the application and receipt, being a binding, valid and enforcible contract, and the company not having waived the provisions thereof by retaining the $3 on the first semi-annual premium a reasonable time, and until it could be ascertained whether or not the applicant was going to recover, there was nothing for the court to submit to the jury, and the peremptory instruction was proper.

Judgment affirmed.