## AMERICAN BANKERS' INS. CO. v. THOMAS.

No. 4750.　Opinion Filed October 12, 1915.

Rehearing Denied January 11, 1916.

(154 Pac. 44.)

1. INSURANCE—Life Insurance—Delivery of Policy—Waiver of Condition. On December 5, 1910, the insured made application in writing to defendant at S., through its special agent, for the policies sued on, therein representing his health to be good. The special agent recommended the acceptance of the risk, sent the same to the home office at Chicago, where policies issued and were sent to the bank at S., pursuant to an arrangement with the bank to turn them over to any one having the right to receive them on payment of the premiums, which, when paid, were to be credited to the account of defendant by the bank as its depository. At the time the policies arrived M. was the local soliciting agent of the defendant at S., under agreement with defendant for a certain per cent. of the first year's premium on business written with his aid. Having assisted in securing the business in question, and being entitled to part of the premiums

on delivery of the policies, M., on February 8, 1911, with knowledge that the insured was in ill health, instructed H., a collector for the bank, to turn the policies over to the insured on payment of the premiums if he so desired; whereupon H., with the permission of the cashier, after banking hours entered the bank, left a check for the amount of the premiums, took the policies, and caused them to be delivered to the insured, who died next day. **Held,** the policies providing that they "shall not take effect until the same shall be issued and delivered by the company, and the first premium paid thereon in full when my health is in the same condition as described in this application," the good health of the insured was a condition precedent to the delivery of the policies. **Held,** further, that the local soliciting agent was without authority to waive such condition, and that on the facts stated no risk attached under the contract of insurance.

2. **INSURANCE—Life Insurance—Action on Policy—Defense—Estoppel.** But where, in addition to the facts stated, the check given in payment of the premiums was collected and the proceeds placed to the credit of defendant, pursuant to a prior arrangement with the bank, and, being thus received, has since been retained by defendant with knowledge of all the facts, **held** that such action constitutes a waiver of such condition precedent, and that defendant is estopped to urge that no risk attached under the contract of insurance.

(Syllabus by the Court.)

*Error from District Court, Pontotoc County;*

*Tom D. McKeown, Judge.*

Action by Belle D. Thomas against the American Bankers' Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Frank C. Rogers, C. A. Galbraith,* and *Hainer, Burns, & Toney,* for plaintiff in error.

*J. F. McKeel,* for defendant in error.

TURNER, J. On January 3, 1912, in the district court of Pontotoc county, Belle D. Thomas, defendant in error, sued the American Bankers' Insurance Company, plaintiff in error, on two life insurance policies issued by it, one insuring the life of Bowline F. Thomas, her hus-

band, in the sum of $2,000, and the other insuring his life for $1,000, both in her favor. The policies were issued upon application made by him as part of the contract, both of which provide that the same "shall not take effect until the same shall be issued and delivered by the company, and the first premium paid thereon in full, while my health is in the same condition as described in this application," which was therein stated to be good. The petition substantially states that, although at the time the policies were delivered the insured was sick and died the next day, defendant is estopped to urge that the same did not take effect by reason of certain facts alleged in the petition as constituting a waiver. After demurrer thereto had been filed and overruled and defendant had answered, in effect, a general denial and certain special pleas, and plaintiff had joined issue by reply, there was trial to a jury, and judgment for plaintiff for the amount of both policies with interest, and defendant brings the case here.

Both sides concede that the liability of the company turns upon the question of whether the risk attached. Defendant says it did not, because, it is urged, one Martin, who delivered the policies, was without authority so to do, or to waive the condition precedent therein that risk would not attach unless the same were delivered while the insured was in good health.

There is no dispute as to the essential facts. The evidence discloses that on December 5, 1910, the insured made application in writing to defendant at Stonewall, through one Edgar D. Smith, its special agent, for the policies in question, therein representing his health to be good. Smith recommended the acceptance of the risk and

sent the same to the home office at Chicago. There the policies were issued and sent to the First National Bank at Stonewall, under an arrangement with the bank to turn them over to any one having a right to receive them on payment of the premiums, which was to be credited to the account of the company by the bank as its depository. At the time the policies arrived H. B. Martin was the local soliciting agent of the defendant, theretofore appointed by Smith under an agreement in writing with the company for a certain per cent. of the first year's premium on business written and settled for by himself and for another per cent. of the premium on business written as a result of his personal assistance. He could receive no money due or to become due except in exchange of premium receipts signed by an executive officer of the company. Having assisted Smith in securing the application in question, and being entitled to part of the premium due him on the delivery of the policies in question, and also having theretofore received from Smith a letter requesting him not only to make settlement on certain policies that had come in, but also on "any other policies that may come in," Martin, while the insured was in good health, being informed that the policies were at the bank for delivery, on about February 1st. informed the insured where they were, and if he wanted them they would go get them, whereupon they went to the bank. There Martin left the insured outside and went into the bank and got them, but, on his return some 45 minutes later, the insured was gone. He was taken sick on February 3d, and no further effort was made to deliver the policies until February 8, 1911. On that day N. T. Heard, who was collecting for the bank. having in his possession a key thereto, learned that the

insured was sick and so informed Martin, who requested him to ascertain whether insured wanted the policies, and, if so, to get them from the bank and deliver them. Upon learning that the insured wanted the policies, Heard, after banking hours, telephoned the cashier to that effect, and that the insured was sick, whereupon the cashier told him to go to the bank and get the policies and leave the premium, which he did by entering with his key and leaving with the bank a check for the amount thereof, drawn by the son of the insured, which was paid, and its proceeds the next day placed to the credit of the defendant company. Upon receiving the policies Heard took them to his safe, and the next morning turned them over to one Bishop, who delivered them to the insured, who died the next day. Under this state of facts no risk attached.

That part of the policy which provides that the same shall not take effect until it is delivered by the company while the insured is in good health prescribes a condition precedent to the attachment of the risk under the policy. 1 Cooley's Briefs on the Law of Insurance, p. 451. Recognizing it to be such, plaintiff properly pleaded a waiver thereof by setting up the facts as stated. *Western, etc., Ins. Co. v. Coon,* 38 Okla. 453, 134 Pac. 22; *Anders v. Life Ins. Clearing Co.,* 62 Neb. 585, 87 N. W. 331. Favoring liability, she contends that the knowledge of Martin of the ill health of the insured at the time the policies were delivered was the knowledge of the company and a waiver of the condition. Not so. Assuming that Martin was the agent of the company at that time, with authority to deliver the policies, it failing to appear that he had anything to do with the execution thereof or the acceptance of the risk, his knowledge was not that of the company. In *Merchants' & Planters' Ins. Co. v. Marsh,* 34 Okla. 453,

125 Pac. 1100, we held that the knowledge of the agent was the knowledge of the company only where the authority of such agent, derived from the company, was to solicit applications and' execute and deliver contracts of insurance as an *alter ego* of the company, and that it was only in such case that he had power to waive the conditions of the policy. In that case the agent was, as here, a local or soliciting agent, and there the policy sued on was, as here, a "home office policy," or one issued direct by the president and secretary of the company as distinguished from one issued by the local agent. There, in the syllabus, we said:

"A local agent of an insurance company, whose only power 'is to solicit applications for insurance, and forward them to the company for approval, when, if approved, the company issues the policy and causes it to be delivered to the insured, has no power to waive any of the provisions of the policy so delivered. * * * "

Also in keeping with this rule is *Des Moines Ins. Co. v. Moon*, 33 Okla. 437, 126 Pac. 753. There we said:

" * * * Where the local agent has the power to accept a risk and deliver a policy of insurance, and is advised and has full knowledge, at the time of the delivery of the policy, that certain conditions of the policy, which may be waived, are violated, such policy is binding upon the company, notwithstanding the fact that it contains a provision that none of the company's officers or agents can waive any of its provisions, except in writing, indorsed upon the policy. This case [referring to *Western National Ins. Co. v. Marsh*, 34 Okla. 414, 125 Pac. 1094], unanimously concurred in by the members of the court, settles the rule in this jurisdiction as to contracts of insurance written after the admission of the state. * * *"

Of course, if the local agent had not power, as here, to accept the risk, he had no power to waive the condition

precedent in the policy.  Cases relied on by plaintiff
which hold the contrary practically under the same state
of facts fail to draw this distinction, and seem to hold
that the knowledge of a mere soliciting agent of the com-
pany of the ill health of the insured at the time of the
delivery of the policy is the knowledge of the company,
and hence a delivery with such knowledge constitutes a
waiver of the condition under consideration.   They are
*Roe v. National Life, etc., Co.,* 137 Iowa, 696, 115 N. W.
500, 17 L. R. A. (N. S.) 1144; *Connecticut, etc., Ins. Co.
v. Grogan* (Ky.), 52 S. W. 959; *N. W. Life Ins. Co. v.
Findley,* 29 Tex. Civ. App. 494, 68 S. W. 695; *National
Life Ins. Co. v. Twiddel* (Ky.), 58 S. W. 699; *Home
Forum Ben. Order v. Varnado* (Tex. Civ. App.), 55 S.
W. 364, and others.   But the distinction is referred to in
*Bell v. Ins. Co.,* 166 Mo. App. 390, 149 S. W. 33.   In that
case the insured, who was plaintiff's brother, died at
Nogales, Ariz., as a result of injuries received while work-
ing as a telegraph lineman.   On July 17, 1909, he made
application to defendant for a policy of life insurance,
payable in event of his death to plaintiff.   He made it to
defendant's soliciting agents at that place, and paid the
first annual premium cash in hand.   The application was
forwarded to defendant by mail, and duly received in St.
Louis, Mo., on July 23, 1909.   The policy was conditioned
the same as here.   On July 27th, the application was duly
accepted, and the policy issued and was mailed August
4, 1909, to the soliciting agents for delivery to the in-
sured.   Upon its arrival on August 8, 1909, pursuant to
instructions, the policy was deposited for him in the safe
of the soliciting agents, along with other private papers
of the insured kept there by him.   Two days before that
time the insured received a fatal injury, from which he died

on the night of August 11th. On August 6th, one of the soliciting agents visited the insured and knew of his injury. The court said:

"There can be no doubt that it is competent for the parties to stipulate in the application for insurance, as here, that the policy shall not be effective or binding until delivered to, and accepted by, the insured while in good health and the payment of the first premium is made. It is said that a contract of life insurance is not complete until the last act necessary to be done by the insured, under the conditions of the contract, after acceptance of the application by the company, has been done by him, and the courts, therefore, in proper cases, sustain such agreements which operate to postpone the taking effect of the policy until the delivery and premium payment while the insured is in good health. See 1 Bacon, Life Ins. (3d Ed.), sec. 272; *Kilcullen v. Met. Life Ins. Co.,* 108 Mo. App. 61, 82 S. W. 966; *Misselhorn v. Mutual Reserve, etc., Life Ins. Co.,* 30 Mo. App. 589; *McGregor v. Met. Life Ins. Co.* [143 Ky. 488], 136 S. W. 889. But though such be true, the provision for thus suspending the policy, as an effective contract, until the first premium is paid and its delivery, while the insured is in good health, is for the benefit of the insurer, and obviously may be waived by it or by its agent possessing authority with respect to that matter. See *Rhodus v. Kansas City, etc., Ins. Co.,* 156 Mo. App. 281, 137 S. W. 907. * * * But it is insisted that a mere soliciting agent, such as Cummings, is without authority to waive the condition in the policy here relied upon, and, for the purpose of the case, the proposition may be conceded as true."

Whereupon the court proceeded to consider whether the company, under the facts in that case, had waived the condition in the policy relied upon. We are therefore of opinion that Martin was without authority to waive the condition relied on, and that plaintiff cannot recover unless defendant is estopped to deny that liability at-

tached by reason of receiving and retaining the premiums as alleged in the petition. Joining issue on these allegations, defendant by answer in effect admitted accepting the premiums as stated, but pleaded in avoidance that it tendered them back to a representative of the assured and demanded a return of the policies, which was refused, and for that reason, it is urged, defendant is not estopped to assert that no liability attached under the policies.

On this point there is no conflict in the evidence. It discloses that the check which paid the premiums was drawn by Duard Thomas, the son of plaintiff and the assured; that it was received by the bank, cashed, and the proceeds placed to the credit of the company, as directed by the company, and there it remains, so far as this record discloses. Mart'n, the local agent, knew of the death of the insured on the day it occurred, and communicated it to the company, but just when the record does not disclose. That he did so is disclosed in a letter dated Chicago, March 28, 1911, addressed to him and signed by Edgar D. Smith, in which Smith informed him that the company would resist the claim. Heard informed the company through Frank C. Rogers, their attorney, on March 11, 1911, receipt of which information is acknowledged in a letter from him to Heard, dated Chicago, March 15, 1911, in which he informed Heard that the secretary of the company had recently visited Stonewall and made an investigation of the facts in the case, and the board of directors had authorized him to state "that they will refuse to pay the policy"; also that:

"The company has offered to return the money paid to the First National Bank of Stonewall, by B. E. Thomas & Co., as first year's premium upon the policy, and has

asked for a return of the policy. The offer to return the premium upon delivery of the policy to the company or its authorized agent is still open."

As the record fails to disclose that the company had done any such thing, of course no such offer was "still open." Thus the matter stood, the company still retaining the premiums, when in a letter, dated Chicago, October 28, 1911, said attorney informed plaintiff's attorney, Mr. McKeel, that:

"In reply to your esteemed favor of the 24th inst., beg to state that nothing has arisen since last spring to cause a change in the attitude of this company as expressed in our favor of March 15th, to Mr. T. N. Heard"

—and that:

"Shortly after Mr. Thomas' decease the company caused a careful investigation to be made of all the circumstances attending his application for insurance, * * *" and therefore, "under these circumstances, this company could do nothing but instruct the bank with which Mr. Thomas' representative had deposited the money in payment of his premiums to return the same to his estate."

The record wholly fails to disclose that the company ever instructed the bank to do any such thing, much less that the bank ever attempted to do as instructed. The evidence fails to support the allegations in the answer that the premiums were tendered or offered to be returned to any one. It takes no citation of authority to support the proposition that this condition precedent, being for the benefit of the company, may be by the company waived, and is waived by its accepting and retaining the premiums with knowledge of all the facts. 1 Cooley's Brief on the Law of Insurance, at page 610, says·

"In accordance with the general rule that estoppel may arise from the acceptance and retention of benefits

is the principle that an insurer, by receiving and retaining the premiums on a contract of insurance, is estopped to deny its power to issue a policy, or that liability attached thereunder. *Lockwood v. Middlesex Mut. Assur. Co.*, 47 Conn. 553; *Ins. Co. of North America v. McDowell*, 50 Ill. 120, 99 Am. Dec. 497; *Esch v. Home Ins. Co.*, 78 Iowa, 334, 43 N. W. 229, 16 Am. St. Rep. 443; *Watts v. Equitable Mut. Life Ass'n*, 111 Iowa, 90, 82 N. W. 441; *Powell v. Factors' & Traders' Ins. Co.*, 28 La. Ann. 19; *Hoge v. Dwelling House Ins. Co.*, 138 Pa. 66, 20 Atl. 939."

In *Pacific Mut. Life Ins. Co. v. McDowell*, 42 Okla. 300, 141 Pac. 274, this court, in an opinion by Harrison, C., in the syllabus, said:

"1. Where a policy insures against accident for a period of one month only, but provides that it may be renewed and kept in force from month to month by the payment of monthly premiums on a certain day of each month, and that it shall be void and of no force and effect if such payments are not made on or before the day mentioned in the policy, such forfeiting provisions, being inserted solely for the benefit of the insurance company, may be waived by the company if it so desires, and such waiver on the part of the insurance company may be inferred from acts, as well as words.

"2. Although a policy may provide for the payment of monthly premiums on or before 12 o'clock noon of the first day of each month, and that all premiums are due without grace at the time specified, and that the policy shall be void unless such premiums are so paid, and contains the further provision that no alterations or waiver of the contract shall be valid unless made in writing at the company's home office and signed by the president or vice president and secretary or assistant secretary, yet if such company. in dealing with a certain class of policy holders in a certain district, establishes a custom with such policy holders of accepting the premium payments at a later date because of the fact that such policy holders receive their monthly pay at a later date, and receives

such premiums and appropriates them and recognizes the policies as continuing in force by accepting the premiums, such acts on the part of the company constitute a waiver of the provision that the policy shall be void unless the premiums are paid on the first day of the month.

"3.    Where such monthly premiums are collected and retained by the company month after month, and the policies continued in force, such acts constitute a waiver on the part of the company itself, and not a waiver on the part of its local agents and collectors."

In *Life Ins. Co. v. Altschuler,* 55 Neb. 341, 75 N. W. 862, the policy sued on contained the same condition precedent as here, which good health was required to be in accordance with the health certificate and premium receipt accompanying same.    Plaintiff admitted that no such certificate had been furnished, and insisted that such requirement had been waived by the defendant.    After the policy had been delivered, the second premium became due and payable July 5th.    It was not paid until August 4th, when the wife of assured procured a draft for the amount and sent it to the home office at St. Paul.    There the draft was received on August 6th, and immediately cashed, and a receipt therefor duly signed by the president of the company, bearing date July 5th, was mailed to her.    On August 14th, insured died, and on the 18th the defendant company sent plaintiff a draft, informing her that the policy of her husband had never been in force, and that the money sent for the premiums had been kept on deposit awaiting the delivery of the health certificate mentioned in the contract.    Holding such to be a waiver of the condition there under consideration, the court said:

"The letter accompanying the remittance stated in plain language that it was sent as payment of the second

installment of the premium; and the defendant did not receive it on deposit. It received it as payment; for it so states in its receipt. The recital of that document is that the money was received for 'the quarterly premium due July 5, 1893, * * * on policy No. 2143, insuring the life of Sigmund Altschuler.' Indeed, according to a familiar principle of law, the defendant could not have retained the money except on the terms and for the purpose it was rendered. By the mere act of converting plaintiff's draft into money and retaining the same, the defendant accepted it as payment of the premium then due. The idea of holding it as a deposit was manifestly an afterthought, suggested by information of Altschuler's death. It is then undisputedly established that, with full knowledge of the fact that the health certificate had not been furnished, the company collected and retained, until after the death of the assured, the premium which became due on July 5, 1893. Having done so—having treated the contract as valid for the purpose of collecting premiums —it cannot now, when sued by the beneficiary, insist that it was void from the beginning. The company, with full knowledge of all the facts, dealt with the assured, during his lifetime, on the assumption that his contract of insurance was in force, and it cannot, now that he is dead, be heard to assert that he was deluded by its agents into purchasing and paying for a still-born policy. To hold that the company could escape liability under such circumstances would shock the crudest sense of justice."

And so we say this defendant cannot receive and retain these premiums and all the benefits of the contract of insurance without assuming its burdens. This, for the reason the evidence discloses that they were accepted by the company and retained by it, and never tendered or offered to be returned to any one, and that if defendant instructed the bank to make such tender or offer to return, and the bank failed to do so, this defendant must suffer the consequences of the neglect of its own agent.

We are therefore of opinion that the judgment of the court was right, and should be, and the same is, affirmed.

All the Justices concur.