## CHICAGO, R. I. & P. RY. CO. v. McELREATH et al.

No. 7105—Opinion Filed Nov. 6, 1917.

Rehearing Denied Jan. 8, 1918.

(169 Pac. 628.)

**1. Carriers—Interstate Shipment of Live Stock—Suit for Damages—Conditions Precedent.**

A provision in a contract with the carrier for an interstate shipment of live stock, "That, as a condition precedent to the bringing of any suit for damages for any loss or injuries to the person or persons or property covered by this contract, the claimant shall give notice in writing of the claim for such damages to some general officer, claim agent, or station agent of the said first party, not later than 90 days after the date of the loss or injury claimed, and a failure to strictly comply with this provision shall be a bar to a recovery to any and all damages occasioned to the person or persons or property embraced in this contract," is reasonable and valid, and no action can be maintained by the shipper for damages for loss or injuries occasioned by said shipment without showing a substantial compliance with the requirements of said provision as to notice.

**2. Same—Claim for Damages—Evidence.**

The evidence and all the reasonable inferences to be drawn therefrom held to be insufficient to justify the court in submitting this cause to the jury upon the issue of a substantial compliance with the provision of said contract.

(Syllabus by Hooker, C.)

Error from District Court, Pontotoc County; Tom D. McKeown, Judge.

Action by Joe McElreath and another against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed, and cause remanded for new trial.

C. O. Blake, R. J. Roberts, W. H. Moore, and K. W. Shartel, for plaintiff in error.

Crawford & Bolen, Lester Maxey, and B. H. Epperson, for defendants in error.

Opinion by HOOKER, C. This is an action to recover damages for injuries alleged to have been caused to cattle of the defendants in error by the negligent handling of the plaintiff in error in the shipment thereof. The shipments involved were interstate, and the evidence and the pleadings show that the same were made under and by virtue of a contract which contained the two following provisions:

"Sixth. That, as a condition precedent to the bringing of any suit for damages for any

loss or injuries to the person or persons or property covered by this contract, the claimant shall give notice in writing of the claim for such damages to some general officer, claim agent, or station agent of the said first party not later than 90 days after the date of the loss or injury claimed, and a failure to strictly comply with this provision shall be a bar to a recovery of any and all damages occasioned to the person or persons or property embraced in this contract.

"Seventh. That as a condition precedent to claiming or recovering damages for any loss or injury to or detention of live stock, or delay in transportation thereof, covered by this contract, the second party as soon as he discovers such loss or injury, shall promptly give notice thereof in writing to some general officer, claim agent, or station agent of the first party, or to the agent at destination or to some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, as the case may be, and before such stock is mingled with other stock; and such written notice shall in any event be served within one day after delivery of the stock at its destination, in order that such claim may be fully and fairly investigated. It is agreed that a failure to strictly comply with all the foregoing provisions shall be a bar to the recovery of any and all such claims."

The plaintiff in error as to one of these shipments, was the initial carrier, and as to the other the intermediate one.

It is admitted that defendants in error complied with provision 7 of this contract, but it is a disputed question as to whether any compliance was had with provision 6 thereof. The lower court submitted this question to the jury, which found that section 6 of this contract had been complied with; so the first question for us to determine is to ascertain whether this provision of the contract is a valid and an enforceable one, and, if so, whether there was any evidence justifying the submission of this question to the jury. There are other questions raised, but under the view we have taken of this case it is unnecessary to consider them. These contracts were fairly entered into by the parties, and they constitute the agreements under which these shipments were made. If provision 6 of these contracts is valid and enforceable, then, before defendants in error are entitled to recover, they must show a substantial compliance therewith. In order to determine the reasonableness of this provision, it is our duty to construe the contract as a whole, and consider the duty imposed by virtue of section 7 thereof in connection therewith. It is admitted that defendants in error gave

the one day's notice provided by this contract. Now, having given to the delivering line this notice, is it unreasonable to require the defendants in error to give the notice of its claim as provided by section 6 before any liability can accrue by reason of any damage suffered to the shipment in question? In our opinion, the giving of the one-day notice at the point of destination to the delivering carrier did not obviate the necessity of complying with the other provision of the contract which required the notice of the claim to be presented to the company against which damages are sought within the 90 days.

First. Is this provision of the contract reasonable? If so, it will be upheld.

In the case of M., K. & T. R. Co. v. Harriman Bros., 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, the Supreme Court of the United States, said:

"The court below held that the stipulation in the shipping contract that no suit shall be brought after the lapse of 90 days from the happening of any loss or damage, 'any statute or limitation to the contrary notwithstanding,' was void.

"It is conceded that there are statutes in Missouri, the state of the making of the contract, and the state in which the loss * * * occurred, and in Texas, the state of the forum, which declare contracts invalid which require the bringing of an action for a carrier's liability in less than the statutory period, and that this action, though started after the lapse of the time fixed by the contract, was brought within the statutory period of both states.

"The liability sought to be enforced is the 'liability' of an interstate carrier for loss or damage under an interstate contract of shipment declared by the Carmack Amendment of the Hepburn Act of June 29, 1906. The validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed, is a federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law, or legislation. * * * The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence. * * *

"The policy of statutes of limitation is to encourage promptness in the bringing of actions, that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents,

or failure of memory. But there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short. That is a question of law for the determination of the court. Such stipulations have been sustained in insurance policies. * * * A stipulation that an express company should not be held liable unless claim was made within 90 days after a loss was held good in Southern Exp. Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556. Such limitations in bills of lading are very customary, and have been upheld in a multitude of cases. * * * The provision requiring suit to be brought within 90 days is not unreasonable."

In Ray v. M., K. & T. R. Co., 90 Kan. 244, 133 Pac. 847, the Supreme Court of Kansas said that the Carmack Amendment does not prevent the carrier and shipper from stipulating for a reasonable limitation as to the time for bringing an action. in case of loss or of damage to an interstate shipment.

And in Hafer v. St. Louis Southwestern R. Co., 101 Ark. 310, 142 S. W. 176, Ann. Cas. 1913E, 866, it was held that a stipulation in a contract of shipment that actions for the recovery of any claim arising thereunder must be commenced within six months after the cause of action accrues does not violate Acts 1907, p. 557, forbidding common carriers to abridge, modify, limit, or abrogate their common-law liability. and that a contract, however, which does not in any way abridge or defeat the complete vestiture of a right to recover from the carrier for any breach of duty imposed upon it by the common law, or growing out of any liability created against it by the common law, does not operate as a limitation, modification, or abridgement of any duty or liability imposed by the common law upon the carrier. The limitation of the time within which suit shall be brought for any cause of action is but a period fixed in which the right itself must be asserted. It does not in any way abridge or impair such right itself, nor limit in any way any liability incurred by the carrier which creates such right. It simply effects the remedy for the enforcement of such right. The general period of limitation fixed by statute names a time within which an action must be brought against a carrier; and yet such statute of limitation cannot be said to abridge or limit any liability of a common carrier as fixed by the common law. For the same reason a contract limiting the time within which the right of action shall be asserted does not abridge or limit such liability.

And in Gulf, C. & S. F. R. Co. v. Trawick, 68 Tex. 314, 4 S. W. 567, 2 Am. St. Rep. 494,

it was held that a contract between a shipper of live stock and a railway company which limited the time within which suit might be brought by the shipper for any claim for damages arising under the contract to 40 days from the time the damage occurs was held to be reasonable and valid, notwithstanding a statutory provision that common carriers cannot limit or restrict their common-law liability. Such a contract did not in any way defeat the complete vestiture of the right to recover from a common carrier for a breach of duty that the common law would give, and hence did not operate as a restriction on the common-law liability of the carrier, but merely required the assertion of that right by action at an earlier period than would be necessary to defeat it through the operation of the ordinary statutes of limitation.

The Supreme Court of the United States, in Georgia, Florida & Alabama Railway Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 849, said:

"The effect of a stipulation in a bill of lading for an interstate shipment requiring claims for damages or misdelivery to be presented within four months after a reasonable time for delivery has elapsed cannot be avoided by suing the carrier in trover on the theory that in making the misdelivery it converted the shipment, and thus abandoned the contract, since the parties could not waive the terms of the contract under which the shipment was made, pursuant to the act of February 4, 1887 (24 Stat. at L. 379, c. 104), as amended by the act of June 29, 1906 (34 Stat. at L. 593, c. 3591; Comp. Stat. 1913, § 8592), nor could the carrier by its conduct give the shipper the right to ignore the terms and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations."

And in the body of the opinion it is said:

"With other defenses, the railway company pleaded that the shipper had failed to comply with the following provision of the bill of lading issued by the initial carrier: 'Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after the delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable.' * * *

"The decisions also established that the question as to the proper construction of the bill of lading is a federal question. The clause with respect to the notice of claims —upon which the plaintiff in error relies in its second contention—specifically covers 'failure to make delivery'. * * * When the goods have been misdelivered, there is as

clearly a 'failure to make delivery' as when the goods have been lost or destroyed; and it is quite as competent in the one case as in the other for the parties to agree upon reasonable notice of the claim as a condition of liability. It may be urged that the carrier is bound to know whether it has delivered to the right person or according to instructions. This argument, however, even with respect to the particular carrier which makes a misdelivery, loses sight of the practical object in view. In fact, the transactions of a railroad company are multitudinous, and are carried on through numerous employes of various grades. Ordinarily the managing officers, and those responsible for the settlement and contest of claims, would be without actual knowledge of the facts of a particular transaction. The purpose of the stipulation is not to escape liability, but to facilitate prompt investigation. And, to this end, it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contracts should require reasonable notice of all claims against it even with respect to its own operation.

"There is, however, a further and controlling consideration. We are dealing with a clause in a bill of lading issued by the initial carrier. The statute casts upon the initial carrier responsibility with respect to the entire transportation. The aim was to establish unity of responsibility. * * * It is not to be doubted that if, in the case of an interstate shipment under a through bill of lading, the terminal carrier makes a misdelivery, the initial carrier is liable; and when it inserts in its bill of lading a provision requiring reasonable notice of claims 'in case of failure to make delivery,' the fair meaning of the stipulation is that it includes all cases of such failure, as well those due to misdelivery as those due to the loss of the goods. But the provision in question is not to be construed in one way with respect to the initial carrier, and in another with respect to the connecting or terminal carrier. As we have said, the latter takes the goods under the bill of lading issued by the initial carrier, and its obligations are measured by its terms. * * * The clause gave abundant opportunity for presenting claims, and we regard it as both applicable and valid. * * *

"It is urged however, that the carrier, in making the misdelivery, converted the flour, and thus abandoned the contract, But the parties could not waive the terms of the contract under which the shipment was made pursuant to the federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed. * * * We are not concerned in the present case with any question save as to the applicability of the provision, and its validity, and as we find it to be both applicable and valid, effect must be given to it."

The Supreme Court of the United States in Southern Exp. Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 557, in construing a contract executed by the company which contained a provision as follows:

"It was agreed between them and the plaintiff, and made one of the express conditions upon which the package was received, that they should not be held liable for any loss of, or damage to, the package whatever, unless claim should be made therefor within 90 days from its delivery to them." —said:

"Notwithstanding the great rigor with which courts of law have always enforced the obligations assumed by common carriers, and notwithstanding the reluctance with which modifications of that responsibility, imposed upon them by public policy, have been allowed, it is undoubtedly true that special contracts with their employers limiting their liability are recognized as valid, if in the judgment of the courts they are just and reasonable, if they are not in conflict with sound legal policy. The contract of a common carrier ordinarily is an assumption by him of the exact duty which the law affixes to the relation into which he enters when he undertakes to carry. That relation the law regards as substantially one of insurance against all loss or damage except such as results from what is denominated the act of God or of the public enemy. But the severe operation of such a rule in some cases has led to a relaxation of its stringency, when the consignor and the carrier agree to such a relaxation. All the modern authorities concur in holding that, to a certain extent, the extreme liability exacted by the common law originally may be limited by express contract. The difficulty is in determining to what extent, and here the authorities differ. Certainly it ought not to be admitted that a common carrier can be relieved from the full measure of that responsibility which ordinarily attends his occupation, without a clear and express stipulation to that effect obtained by him from his employer. And even when such a stipulation has been obtained the court must be able to see that it is not reasonable. * * *

"Hence, as we have said, it is now the settled law that the responsibility of a common carrier may be limited by an express agreement made with his employer at the time of his accepting goods for transportation, provided the limitation be such as the law, can recognize as reasonable and not inconsistent with sound public policy. * * * In York Mfg. Co. v. Cent. R. R. Co., 3 Wall, 107 (70 U. S.) 18 L. Ed. 170, it is ruled that the common-law liability of a

common carrier may be limited and qualified by special contract with the owner, provided such special contract does not attempt to cover losses by negligence or misconduct. And in a still later case, Railroad Co. v. Lockwood, 17 Wall. 357 (84 U. S.) 21 L. Ed. 627, where the decisions are extensively reviewed, the same doctrine is asserted. * * * The question, then, which is presented to us by this record is whether the stipulation asserted in the defendant's plea is a reasonable one, not inconsistent with sound public policy.

"It may be remarked, in the first place, that the stipulation is not a conventional limitation of the right of the carrier's employer to sue. He is left at liberty to sue at any time within the period fixed by the statute of limitations. He is only required to make his claim within 90 days, in season to enable the carrier to ascertain what the facts are, and, having made his claim, he may delay his suit.

"It may also be remarked that the contract is not a stipulation for exemption from responsibility for the defendant's negligence, or for that of their servants. * * * But an agreement that, in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor, or by the consignee, within a specified period, if that period be a reasonable one, is altogether of a different character. It contravenes no public policy. It excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence, and of capacity which the strictest rules of the common law ever required. * * * The defendants are an express company. We cannot close our eyes to the nature of their business. They carry small parcels, easily lost or mislaid, and not easily traced. They carry them in great numbers. Express companies are modern conveniences, and notoriously they are very largely employed. They may carry—they often do carry—hundreds, even thousands, of packages daily. * * * If a bailor may delay giving notice to them of a loss, or making a claim indefinitely, they may not be able to trace the parcels bailed, and to recover them, if accidentally missent, or if they have in fact been properly delivered. With the bailor, the bailment is a single transaction, of which he has full knowledge; with the bailee, it is one of a multitude. There is no hardship in requiring the bailor to give notice of the loss, if any, or make a claim for compensation within a reasonable time after he has delivered the parcel to the carrier. There is great hardship in requiring the carrier to account for the parcel long after that time, when he has had no notice of any failure of duty on his part, and when the lapse of time has made it difficult, if not impossible, to ascertain the actual facts. For these reasons such limitations have been held valid in similar contracts, even when they seem to be less reasonable than in the contracts of common carriers.

"Policies of fire insurance, it is well known, usually contain stipulations that the insured shall give notice of a loss, and furnish proofs thereof within a brief period after the fire, and it is undoubted that, if such notice and proofs have not been given in the time designated or have not been waived, the insurers are not liable. Such conditions have always been considered reasonable, because they give the insurers an opportunity of inquiring into the circumstances and amount of the loss at a time when inquiry may be of service. And, still more, conditions in policies of fire insurance that no action shall be brought for the recovery of a loss unless it shall be commenced within a specified time, less than the statutory period of limitations, are enforced, as not against any legal policy. * * *

"Our conclusion, then, founded upon the analogous decision of courts, as well as upon sound reason, is that the express agreement between the parties averred in the plea was a reasonable one, and hence that it was not against the policy of the law. It purported to relieve the defendants from no part of the obligations of a common carrier. They were bound to the same diligence, fidelity, and care as they would have been required to exercise if no such agreement had been made. All that the stipulation required was that the shipper, in case the package was lost or damaged, should assert his claim in season to enable the defendants to ascertain the facts; in other words, that he should assert it within 90 days. * * *"

See, also, C., R. I. & P. R. Co. v. Grey, 65 Okla. 181, 165 Pac. 157; St. L. & S. F. R. Co. v. Wynn, 54 Okla. 482, 153 Pac. 1156; C., R. I. & P. R. Co. v. Craig, 53 Okla. 18, 157 Pac. 87; Phillips v. Grand Trunk Ry. Co., 236 U. S. 662, 35 Sup. Ct. 444, 59 L. Ed. 774. Numerous other authorities might be cited as to the validity and reasonableness of the provisions of the contract. We do not think it is necessary to present them here. To our minds this provision of the contract is reasonable, just, and valid; it did not relieve the carrier from responsibility from any act of negligence, but merely imposed upon the shipper or consignee the duty of presenting a claim for damages within the period of time stated, and unless this provision of the contract has been complied with, recovery cannot be had.

Second. If this provision of the contract was valid, and if it is just and reasonable, and it was so regarded by the parties and the trial court, is there any evidence in this record that justified the trial court in submitting this case to the jury? We think not. All the evidence bearing upon this question may be found at pages 145, 146, and 147 of the case-made, which is presented here verbatim:

"Joe McElreath, recalled. Direct examination by Mr. Bolen:

"Q. You stated you got to Ada with these cattle on the 10th of June, 1912? A. Yes. Q. And the record shows you filed suit on the 18th of October, 98 days after that. Now, please state to the jury whether or not you notified the Rock Island Railway Company by letter through your attorney of your claim for damages within 90 days from the time you arrived at Ada?

"By Mr. Moore: Defendant objects to the question as being incompetent, irrelevant and immaterial; goes to a very material part of the case. That raises—

"By the Court: Objection overruled.

"By Mr. Moore: Defendant excepts.

"A. I did some 30 or 40 days before this suit was filed. Mr. Bolen, my attorney, got the address from I. McNair, Frisco agent. Q. You present when I phone Mr. McElreath? A. Yes, sir. Q. Live stock claim agent for the Rock Island? A. Yes, sir. Q. You present when I wrote the letter? A. Yes, sir. We got the address from Mr. McNair. Mr. Bolen telephoned Mr. McNair for the address of the Rock Island live stock agent. Q. Who mailed the letter? A. I mailed the letter. You gave it to me, and I brought it down and mailed it.

"Cross-examination by Mr. Moore:

"Q. Who is Mr. McNair? A. Frisco agent. Q. He gave you the name? A. Gave it to Mr. Bolen. Q. Don't know what name he gave you? A. No, sir. Q. Don't know what the address was? A. Some one in Chicago, Ill. Q. Live stock agent? A. I think that is what he asked for; live stock agent's address. Q. Mr. McElreath, do you not know there is no such office of the Rock Island Company called live stock agent? A. I don't know. Q. All you know you wrote to some one whose address you got from Mr. McNair? A. Mr. Bolen asked Mr. McNair for the proper address of some one to notify of this claim. Q. You wrote it on the typewriter? A. Yes, sir. Q. You got a carbon? A. I don't know. Q. You know whether it is the custom of Mr. Bolen to preserve copies of his letters? A. I don't know.

"Redirect examination by Mr. Bolen:

"Q. It was claim agent been calling live stock agent? A. Yes, sir.

"Recross-examination by Mr. Bolen:

"By Mr. Moore; Objected to; it is in evidence that Mr. Bolen telephoned to Mr. McNair; and ask it all be stricken.

"By the Court: I will strike out the testimony of what Mr. McNair said to Mr. Bolen; I will leave the testimony as to writing the letter and mailing the letter. (Witness excused.)"

In our judgment, this does not substantially comply with this provision of the contract. While it is true that the question as to whether or not the notice was given in time was submitted to the jury, and the jury found that the notice was given in time, yet before a jury can decide any question of fact, some competent evidence sufficient to justify a decision should be presented to them. This record fails to show that any notice was given to the company within the time fixed by the contract, as the only evidence upon that issue is that within 30 or 40 days before suit was filed the notice was given in manner and form stated; yet it was not within the time named in the contract.

Entertaining the view that the provision of the contract is valid and binding, and that before recovery can be had it must be shown that substantial compliance therewith was had, and that the evidence here is insufficient for that purpose. the judgment of the lower court is therefore reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.